[Civil No. 3177. Filed December 27, 1932.]

[17 Pac. (2d) 801.]

EMILY DEANS, as Administratrix of the Estate of ROYCE E. DEANS, Deceased, Appellant, v. COUNTY OF COCONINO, STATE OF ARIZONA, Appellee.

Mr. C. B. Wilson and Mr. O. C. Compton, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. H. L. Russell, County Attorney, and Mr. F. M. Gold, Deputy County Attorney, for Appellee.

ROSS, Acting C. J.—This is an action for damages for the death of Royce E. Deans, who was drowned as a result of the sinking of a ferry-boat owned by

the defendant county and at the time being operated by it across the Colorado River at or near Lees Ferry in said county. It is alleged in the complaint:

"That defendant, on and prior to the 7th day of June, 1928, was the owner of a certain ferry-boat and was engaged in the business of operating the same by and through its employees over, on, and across the Colorado River, at or near that certain place known as Lees Ferry in said County of Coconino, charging and collecting tolls and fare for the conveyance and transportation of passengers and vehicles back and forth on same, the said ferry-boat on and prior to said 7th day of June, 1928 having been operated by defendant as a common carrier for hire under authority of the constitution and laws of the State of Arizona, authorizing the maintenance and operation of same."

It is further alleged that defendant, for a consideration of $3, undertook to transport the decedent and his automobile truck, loaded with merchandise, from the north side of said river to the south side thereof, but, because of the defective condition of the boat, and the carelessness and negligence of defendant's servants and agents in operating it, the boat sunk and decedent was drowned.

A general demurrer to the complaint was sustained, and, the plaintiff electing to stand thereon, judgment was entered for defendant. The demurrer was sustained on the ground that the defendant, in the maintenance and operation of said ferry, was engaged in the performance of a governmental function, and hence not liable for the torts of its agents and servants.

The plaintiff contends (1) that the county was acting in a proprietary capacity, and is subject to the rules of liability of a common carrier for hire, and (2) that its liability for the negligence and carelessness of its agents and servants is statutory, regardless of the capacity in which it was acting.

Ferries, like bridges, generally are links of highways, one being a means to convey persons and freight across a body of water on its surface and the other a passageway above the surface, both serving the same purpose—an unbroken highway for the public. It is said in 25 Corpus Juris 1049, section 1:

"Ferries are frequently referred to or regarded as public highways, being continuations of the highways with which they connect and serving the purpose of a bridge. . . . "

The right or liberty to operate a public ferry is a franchise, and cannot be exercised without the consent of the state, and is subject to the supervision and control of the state or some of its mandatories. Like highways, public ferries are for the benefit and convenience of the general public, and their maintenance and operation is a governmental function. We held in *Larsen* v. *County of Yuma,* 26 Ariz. 367, 225 Pac. 1115, an action for personal injuries sustained by a motorist through the defective construction of a bridge on the public highway, that a county and its agents and servants were not liable, as the duty imposed on them in constructing and maintaining the highway was governmental in its nature, following the common-law rule. The same law is applicable to ferries.

But it is contended by plaintiff that, because the county was collecting tolls for ferrying persons and freight across the Colorado River, it assumed the duties and the liability of a common carrier for hire. In that respect the facts differentiate this case from the Larsen case. The road on which Larsen was traveling when hurt was not a toll road. It is argued that the general grant of power by the board of supervisors of the county to "lay out, maintain, control and manage public roads, ferries and bridges within the county and levy such tax therefor as

authorized by law'' (subdivision 4, § 774, Rev. Code 1928) imports the right to collect tolls thereon, and such is unquestionably the law (25 C. J. 1060, § 17), in the absence of any conditions being attached to the grant of the franchise, but here the power to establish and maintain ferries is coupled with the requirement that it be done by taxation. The ferry is made a public charge. The money for its establishment, maintenance and operation comes from the taxpayers. If the county was exercising the right and liberty of a ferry franchise over the Colorado River by virtue of the general power conferred on it in section 774, *supra*, it had no right to collect tolls, and its act in doing so was *ultra vires* its powers.

There is, however, another way by which the county could have acquired such franchise. In 1928, when this accident occurred, and for a long time prior thereto, the statutes (chapter 3, pars. 5074–5086, Rev. Stats. 1913 [Civ. Code]; amended and revised in Rev. Code 1928, chap. 31, art. 10, §§ 1695–1700) provided a method by which persons might acquire a franchise to operate toll roads, bridges and ferries. Under the provisions thereof, the franchise holder was required to keep and maintain his ferry in good condition and repair, and was made liable for all damages sustained by parties passing over it in consequence of the carelessness or negligence of the owner or owners in keeping the same in proper order (paragraph 5077). This liability extended to the transferee or assignee of the franchise. Upon or after its termination ''by forfeiture or expiration'' the franchise vests in the county, and the supervisors may, at their option, declare it free or collect tolls (pars. 5079, 5080). The county is also authorized to purchase the franchise from the grantee (par. 5081).

Granting that the provisions concerning liability for negligence apply to the county as well as to the

grantee of a franchise, or his transferees or assignees, the complaint fails to show that the county in this case obtained the Lees Ferry franchise after its termination "by forfeiture or expiration," or by purchase from the grantee. Before we would be justified in determining the county is liable for damages for the negligence of its agents and servants under chapter 3, *supra*, it should be made to appear with certainty that it acquired the franchise under the provisions of said chapter. This the complaint fails to do.

No cause of action being stated either at common law or under the statute, the demurrer was properly sustained.

The judgment is affirmed.

LOCKWOOD, J., and JOSEPH S. JENCKES, Superior Judge, concur.

The Honorable Chief Justice A. G. McALISTER being unable by reason of illness to be present upon this hearing, the Honorable JOSEPH S. JENCKES, Judge of the Superior Court of Maricopa County, was called in to sit in his stead.